UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARTEZ JARRETTE LAMONTE EPPS, <br><br> Plaintiff(s), <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant(s). | Case No. 4:21-cv-00983-SRC |

**Memorandum and Order**

Martez Jarrette Lamonte Epps requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85.  The Court affirms the Commissioner's decision.

**I.      Procedural history**

In April 2019, Epps filed a Title XVI application for supplemental security income.  Tr. 153–60.  The Social Security Administration initially denied his application, but Epps requested a hearing before an Administrative Law Judge ("ALJ") and testified at the hearing.  Tr. 127–29, 79–117.  After the hearing, the ALJ denied Epps's application, Tr. 21–35, and the Appeals Council denied his request for review, Tr. 10–14.  As such, the ALJ's opinion stands as the final decision of the Commissioner.

**II.     Decision of the ALJ**

The ALJ determined that Epps had not engaged in substantial gainful activity since April 11, 2019, his application date.  Tr. 26.  The ALJ found that Epps has severe impairments of

"reflexive tachycardia / autonomic nervous system disorder, and asthma." Tr. 26–27. The ALJ further found that Epps does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Tr. 27.

After considering the entire record, the ALJ determined that Epps has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), within the following parameters: (1) he cannot climb ladders, ropes or scaffolds; (2) he can only occasionally climb ramps or stairs; (3) he can occasionally engage in stooping, kneeling, crouching, and crawling, but cannot work at unprotected heights, around moving mechanical parts, or other such hazards; (4) he cannot have concentrated exposure to extreme heat, cold, humidity, wetness, dust, fumes, or other pulmonary irritants; and (5) he cannot be exposed to lights at a brightness level more than would be found typical in an office or factory setting. Tr. 27–31.

The ALJ found that Epps has no past relevant work—noting that although Epps previously worked as a janitor, that work was not at the "substantial gainful activity level." Tr. 31. The ALJ noted that Epps was 26 years old, a "younger individual age 18–49" under 20 C.F.R. § 416.963; that Epps has a high school education and is able to communicate with English; and that transferability of job skills is not an issue because Epps does not have past relevant work. Tr. 31. Considering Epps's age, education, work experience, and RFC, and finding that a significant number of jobs in the national economy that Epps can perform do exist, the ALJ concluded that Epps has not been disabled, as defined in the Social Security Act, since his application date. Tr. 31–32. Epps appeals, challenging the ALJ's RFC finding and raising a separation-of-powers argument. Doc. 20-1 at pp. 1–9.

### III. Legal standard

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively

3

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in

4

significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id*.  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id*.  The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'"  *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

**IV.**     **Discussion**

Epps raises a separation-of-powers argument, claiming that remand is warranted because the ALJ and Appeals Counsel's decisions were defective due to an unconstitutional statutory

5

restriction on the President's authority to remove the Commissioner. Doc. 20-1 at pp. 7–9. Epps also argues that when determining Epps's RFC, the ALJ failed to sufficiently consider his allegations regarding time off task and missing work. Doc. 20-1 at pp. 3–6. The Court addresses Epps's constitutional argument before turning to his RFC argument.

  **A. Absent a showing of actual harm, the unconstitutionality of the removal provision in 42 U.S.C. § 902 does not entitle Epps to a rehearing.**

Epps argues that the adjudication of his claim was constitutionally defective because 42 U.S.C. § 902(a)(3), which restricts the authority of the President to remove the Commissioner of Social Security without good cause, violates the separation of powers. Doc. 20-1 at pp. 7–9. Epps further argues that the decisions of the ALJ and Appeals Council judges were "constitutionally defective" because they "derived their authority from" and "applied regulations promulgated by" the Commissioner. Doc. 20-1 at pp. 7–9. Epps urges that the Court should remand for a "hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." Doc. 20-1 at p. 9 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)).

Kijakazi agrees that 42 U.S.C. § 902(a)(3) is unconstitutional, to the extent that it limits the authority of the President of the United States to remove the Commissioner of Social Security without good cause. Doc. 26 at p. 10 (citing Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C. July 8, 2021)). However, Kijakazi maintains that "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." Doc. 26 at p. 10 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)). The Court agrees.

As an initial matter, the Court notes that Epps failed to raise his constitutional claim in his Complaint. *See* Doc. 1. The notice pleading standard of Rule 8(a)(2) of the Federal Rules of

Civil Procedure requires that a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." And although a complaint need not include detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must provide "fair notice of the nature of the claim" and the "grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 & n.3 (2007) (citations and internal quotation marks omitted).

In his Complaint, Epps merely states that he "seeks judicial review pursuant to 42 U.S.C. § 405(g) following an adverse decision by the Defendant" and "has exhausted all required administrative remedies." Doc. 1. He does not provide any notice of a constitutional claim like the one he raises in his brief—a claim that was available to him at the time he filed his Complaint. Accordingly, the Complaint does not comply with Rule 8. *See Glenn B. v. Kijakazi*, No. 21-CV-00609, 2022 WL 2527798, at *9 (E.D. Mo. July 7, 2022) (citing *WireCo Worldgroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 887 F.3d 987 (8th Cir. 2018)); *Robinson v. Kijakazi*, No. 21-CV-00238, 2022 WL 443923, at *5 (E.D. Wis. Feb. 14, 2022); *Bowers v. Comm'r of Soc. Sec.*, No. 20-CV-06024, 2022 WL 34401, at *6 (S.D. Ohio Jan. 4, 2022), *report and recommendation adopted sub nom. Angela A.B. v. Comm'r of Soc. Sec.*, No. 20-CV-06024, 2022 WL 774053 (S.D. Ohio Mar. 14, 2022) (collecting cases).

Epps's constitutional claim also fails on the merits. First, a majority of the Supreme Court in *Seila Law* held that a removal protection provision regarding the Director of the Consumer Financial Protection Bureau (CFPB) was severable from the remainder of the acts at issue in that case. *See Seila Law*, 140 S. Ct. at 2207–11; *see also Glenn B.*, 2022 WL 2527798, at *10; *Robinson*, 2022 WL 443923 at *5; *Bowers*, 2022 WL 34401, at *7; *Butcher*, 2021 WL 6033683, at *7. Thus, the Supreme Court held that "the CFPB may continue to exist and operate

7

notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." *Seila Law*, 140 S. Ct. at 2207–08; *see also Collins*, 141 S. Ct. at 1788 n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office." (citing *Seila Law*, 140 S. Ct. at 2207–11)).  Similarly, the Social Security Act does not contain an non-severability clause, and the Social Security Administration remains remain fully functional absent the removal protection provision in § 902(a)(3).

Second, Epps does not argue that the ALJ or Appeals Council judges were improperly appointed.  *See* Doc. 20-1 at pp. 7–9; *Collins*, 141 S. Ct. at 1787 ("All the officers who headed the FHFA during the time in question were properly appointed.  Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.").

Third, as Kijakazi correctly identifies, Doc. 26 at pp. 10–16, the mere existence of an unconstitutional removal provision in § 902(a)(3) does not automatically entitle Epps to a rehearing.  Rather, Epps must show a causal link between the provision and "compensable harm."  *Collins*, 141 S. Ct. at 1788–89 (listing several examples of compensable harm); *id.* at 1791 (Thomas, J., concurring) ("[I]n the future, parties and courts should ensure not only that a provision is unlawful but also that unlawful action was taken."); *id.* at 1801 (Kagan, J., concurring) (agreeing "that plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision"); *see also Bhatti v. Fed. Hous. Fin. Agency*, 15 F.4th 848,

8

854 (8th Cir. 2021) (remanding to determine whether plaintiffs seeking an injunction against the Federal Housing Finance Agency "suffered 'compensable harm' and are entitled to 'retrospective relief'" (citing *Collins*, 141 S. Ct. at 1789)).  Epps makes no such showing here. *See* Doc. 20-1 at pp. 7–9.  Accordingly, remand is not warranted.

The Court also notes that the Ninth Circuit and numerous district courts have declined to set aside unfavorable disability benefits decisions solely based on the unconstitutionality of the removal provision in § 902(a)(3), and Epps does not cite a single decision to the contrary.  *See* Doc. 20-1 at pp. 7–9; *Kaufmann v. Kijakazi*, 32 F.4th 843, 849–50 (9th Cir. 2022); *Schwechel v. Kijakazi*, No. 20-CV-00700, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022) (noting that no district court had credited the plaintiff's constitutional claim as of the date of that decision); *Ramos v. Comm'r of Soc. Sec.*, No. 20-CV-01606, 2022 WL 105108 at *3 (E.D. Cal. Jan. 11, 2022) (collecting cases); Doc. 26 at p. 13 n.1 (collecting cases).

**B.     Substantial evidence supports the ALJ's RFC determination.**

Federal regulations define RFC as the most a claimant can still do despite his physical and mental limitations.  20 C.F.R. § 416.945(a)(1).  And "[t]he Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(1).  However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).

Epps argues that in making her RFC finding, the ALJ failed to adequately consider his allegations regarding time off task and missing work—which Epps says are both "critical elements" of the evaluation.  Doc. 20-1 at pp. 3–6.  Epps points to his testimony at the hearing

9

that his autonomic nervous disorder caused lightheadedness, chest pain, and palpitations 3–4 times a week.  Doc. 20-1 at p. 4 (citing Tr. 28).  He argues that the ALJ's conclusion—that "[t]he evidence of record does not support a finding of symptoms of chest pain, palpitations, or lightheadedness of a frequency and severity to prevent the claimant from sustaining a normal work schedule (8 hour a day, 40 hours a week) on a regular and continuing basis"—was conclusory and "le[aves] the Court to guess at the reasoning of the most important part of the [ALJ's] decision."  Doc. 20-1 at pp. 4–5.  The Court disagrees.

The ALJ properly considered all the relevant evidence in reaching her RFC determination.  The ALJ began her RFC determination by assessing Epps's subjective complaints, noting that Epps testified at the hearing "that he was disabled due to a nervous system disorder with symptoms of chest pain, palpitations, and lightheadedness three to four times a week" and "reported in substance symptoms triggered by noxious smells, chemicals, pulmonary irritants, and bright lights."  Tr. 28; *see also* Tr. 92–98.

The ALJ documented Epps's medical history as follows:

> Prior to the alleged onset date, [Epps] was seen by a primary care provider at People's Health Centers on March 18, 2018. [Epps] reported he sought ED treatment on March 1, 2018 for complaints of syncope and March 3, 2018 for complaints of lightheadedness. [Epps] was referred for cardiac evaluation (Exhibit 1F).
>
> [Epps] was seen for cardiology evaluations on March 30 and June 29, 2018 for complaints of chest pain, palpitations, and near syncope. [Epps] underwent cardiac treadmill stress test revealing no abnormalities and 24-hour Holter monitoring without changes. Physical examination findings were normal with clear lungs to auscultation, normal respiratory effort and air exchange, regular heart rhythm with normal S1 and S2 without murmurs (Exhibit 2F).
>
> [Epps] sought ED treatment on July 23, 2018 for complaints of chest pain. Physical examination was normal with regular heart rate and rhythm with normal heart sounds without gallop or rubs. ECG was normal. [Epps] sought ED treatment on August 6, 2018 for complaints of intermittent episodes of palpitations triggered by intense heat, exercise, and smoke. ECG was normal (Exhibit 2F).

[Epps] was seen for cardiology examination on August 31, 2018 for complaints of shortness of breath, palpitations, chest pain, and syncope. It was noted EKGs and cardiac enzymes have been normal. Physical examination was normal (Exhibit 2F).

[Epps] sought ED treatment on September 11, 2018 for complaints of chest pain. Physical examination and electrocardiogram (ECG) were normal (Exhibit 2F).

The medical evidence of record since the alleged onset date demonstrates [Epps] was seen for cardiac electrophysiology examination on March 21, 2019 for complaints of intermittent tachycardia and syncope triggered by strong scents or chemicals. Physical examination findings were unremarkable except for tachycardia with regular rhythm and normal S1 and S2 without murmurs, rubs, or gallops. ECG revealed sinus tachycardia with evidence of early repolarization. [Epps] was diagnosed with syncope of unclear etiology with possible causes including sinus tachycardia, neurocardiogenic syncope, etc. [Epps] was treated for reflexive tachycardia (autonomic nervous system dysregulation) with recommended exercise, hydration, and avoiding noxious smells, smoke, and industrial chemicals (Exhibit 4F).

L. Meyer, P.A., performed an internal medicine consultative examination of [Epps] on July 17, 2019. [Epps] alleged symptoms of constant fatigue, "cloudiness in my head", occasional headaches, chest pains, shortness of breath, dizziness, heart palpitations, and feeling like he was going to pass out. [Epps] alleged his symptoms were triggered by strong smells. Physical examination revealed a normal, independent gait and stance. He could walk on his heels and toes without difficulty. [Epps] had no issues getting on or off the exam table and was able to rise from a chair without difficulty. He had no neurological deficits with normal fine motor activity. The claimant exhibited full (5/5) grip strength bilaterally with full spine and joint range of motion (Exhibit 5F).

Diagnostic findings document 21-day Holter monitor from June 21 to July 19, 2018 showed asymptomatic tachycardia with rare isolated APCs with no significant tachycardic or bradycardic episodes (Exhibits 2F/9 and 4F/3-4). ECGs performed July 23 and August 9, 2018 were normal (Exhibit 2F/13 and 21). Transthoracic cardiac imaging study performed September 11, 2018 was essentially normal (Exhibits 2F/7-8 and 4F/4). ECG performed March 21, 2019 revealed sinus tachycardia with evidence of early repolarization (Exhibit 4F/3). Physical examination findings similarly failed to corroborate [Epps]'s subjective allegations. For example, clinicians typically documented findings within normal limits throughout the relevant period but for tachycardia with normal rhythm, S1, and S2 without murmurs, rubs, or gallops. Clinicians found no evidence of abnormal gait or stance with the ability to ambulate independently. There is no evidence of abnormal lung findings; significant joint or spine abnormality or range of motion limitation; muscle atrophy, spasm, or weakness; bowel or bladder dysfunction; neurological deficits (i.e., reflex, motor, or sensory loss); or inflammatory signs

11

      (heat, redness, swelling, etc.) (*e.g.*, Exhibits 2F/3, 6, 12, 15, 21, 25, and 31; 4F/3; and 5F/4-5).

Tr. 28–29. The ALJ concluded that "[t]he pattern of objective physical examination and diagnostic findings in the medical evidence does not support the intensity of symptoms or resultant limitations alleged by [Epps]." Tr. 29–30.

      The ALJ also noted that Epps's course of treatment was inconsistent with his subjective complaints. Tr. 28–30; *see* 20 C.F.R. § 416.929(c)(3)(v) (appropriate to consider course of treatment when evaluating symptoms). The ALJ noted that Epps received "conservative" treatment consisting of "recommended exercise, hydration, and avoiding stimulants, noxious smells, or industrial chemicals," and that Epps "indicated that he is not prescribed medication." Tr. 30. The ALJ also observed that "[d]espite the frequency and severity of [Epps's] alleged symptoms, he has not sought regular medical treatment since his alleged onset date." Tr. 30.

      The ALJ also noted that Epps "described daily activities that are inconsistent with the severity of symptoms and degree of limitation alleged." Tr. 30. She observed that Epps "is able to essentially function independently, provide care for his own personal needs, prepare simple meals, perform light household chores (laundry [sic] sweep, mop, take out the trash, etc.), shop, and drive." Tr. 30.

      Additionally, the ALJ found persuasive the prior administrative medical findings of Dr. D. Marty, who the ALJ noted had "determined [Epps] had the capacity to sustain light exertional level work with non-exertional postural and environmental limitations." Tr. 31, 112–14. Dr. Marty's report noted that Epps participated in an exercise program at Washington University in March 2019, and that physical examinations were normal. Tr. 114. The ALJ accepted Dr. Marty's assessment as "consistent with the objective medical evidence of record and supported

12

by the physical examination findings noted above." Tr. 31.  Notably, in his brief Epps does not address the ALJ's reliance on Dr. Marty's findings.  *See* Doc. 20-1.

After reviewing the above evidence, the ALJ concluded that Epps's "allegation that his impairments, either singly or in combination, produce disabling symptoms and limitations is not consistent with the objective evidence of record." Tr. 31.  Further, the ALJ found that "the alleged intensity, persistence, duration, and impact on functioning are unsupported by the totality of the evidence outlined above," and noted that her RFC finding reflected the degree to which she found Epps's allegations consistent and supported by the evidence.  Tr. 31.

"Credibility determinations are the province of the ALJ," and the Court "defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'"  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)); *see also id.* ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). Here, the ALJ permissibly discounted Epps's testimony about the extent of his symptoms, based on the inconsistency of his testimony compared to the evidence in the case.

Further, consistent with the Eighth Circuit's instructions, the ALJ properly determined Epps's RFC by considering "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney*, 228 F.3d at 863).  As mentioned, the Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'"  *Stoner*, 818 F.3d at 369 (quoting *Andrews*, 791 F.3d at 928).

13

V.      **Conclusion**

Because Epps has not demonstrated that the unconstitutional removal restriction at issue here actually harmed him, he is not entitled to a rehearing on that basis. *Collins*, 141 S. Ct. 1789; *id.* at 1801 (Kagan, J., concurring); *id.* at 1790 (Thomas, J., concurring). Regarding Epps's challenging the ALJ's RFC determination, this Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Having found that substantial evidence supports the ALJ's conclusions and that the ALJ applied correct legal standards, the Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Epps's [1] Complaint with prejudice. A separate judgment accompanies this Memorandum and Order.

So Ordered this 3rd day of February 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE